UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BARBARA J. SMALLS, on Behalf Of Herself and All Others Similarly Situated,

   Plaintiff,

v.

JACOBY & MEYERS, LLP, TOTAL TRIAL SOLUTIONS, LLC and ANDREW FINKELSTEIN,

   Defendants.

Civil Action No:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Barbara J. Smalls (collectively "Plaintiff"), on behalf of herself and the class described below, alleges on her own knowledge as to her individual circumstances, and upon information and belief as to all other matters based upon the investigation of her counsel against Defendants Jacoby & Meyers, LLP ("J&M"), Total Trial Solutions, LLC ("TTS") and Andrew Finkelstein ("AF").

## THE PARTIES

1.   Plaintiff Smalls is a resident of Nassau County, New York and was a client of the law firm and lawyers named herein as Defendants.

2.   Jacoby & Meyers, LLP ("J&M") is a New York based limited liability partnership operating as a law firm. According to J&M's website, it is "America's largest full-service consumer law firm, founded in 1972 with the goal of making top-quality legal representation available to everyone." At all relevant times, AF was a partner in J&M.

3.   J&M has several offices in New Jersey and thirteen offices throughout New York State – in Manhattan, the Bronx, Hempstead, Kingston, Middletown, New Windsor, Newburgh, Port Jervis, Queens, Spring Valley, Syracuse, Vestal, and Wappingers Falls. J&M's principal

New York office is located at the same address 1279 Route 300, Newburgh, New York 12251 in Orange County, New York.

4. Defendant Andrew Finkelstein ("AF") is and was at all relevant times an attorney admitted to the bar of the State of New York and is a managing partner of J&M. His office is located at 1279 Route 300, PO Box 1111, Newburgh, NY 12551.

5. Defendant Total Trial Solutions, LLC ("TTS") purports to be a litigation support company which can provide services to attorneys in litigation. TTS's office is located at 1279 Route 300, Newburgh, New York 12250. TTS is owned in whole or in part by Defendant AF and by defendant KO.

## JURISDICTION AND VENUE

6. Plaintiff brings this action under New York common law and the General Bus. Law Sec. 349.

7. Jurisdiction lies with this Court under the Class Action Fairness Act.

8. Venue is proper in this district because Defendants' transact business within this district and maintain offices in the State of New Jersey.

## FACTUAL ALLEGATIONS

9. On August 23, 2008, Smalls suffered a personal injury. In October 2008, she retained J&M as her attorney to prosecute her personal injury lawsuit on her behalf pursuant to a Retainer Agreement ("Retainer Agreement"). At the time, AF was a partner of J&M.

10. The Retainer Agreement was drafted by Defendants and signed on behalf of J&M. *See* Exhibit A. Upon information and belief, J&M used standard forms of retainer agreement with all its clients for representation in litigation in New York.

11. The Retainer Agreement represents that client does "… hereby retain the services of Jacoby & Meyers, LLP to prosecute or adjust a claim for damages arising from personal injuries sustained on the 23rd day of August."

12. The Retainer Agreement provides for a 33.3 % contingency arrangement. *Id.* The retainer agreement also provides that "J&M is authorized to incur *reasonable* costs and expenses in performing legal services under this Agreement." *Id.* (emphasis supplied).

13. The retainer also provides:

> "Law Firm is authorized to incur reasonable costs and expenses in performing legal services under this Agreement." Disbursements include but are not limited to expenses for medical or other health care provider reports and testimony, investigative services including service of subpoenas, complaints and other documents and/or other services, and/or services properly chargeable to the enforcement of the claim or prosecution of this action. It is agreed that Law Firm may decline, in its sole discretion, to advance costs and disbursements for expert testimony, investigation or other similar services. J&M is authorized to secure financing on my behalf for such costs and disbursements and I agree to pay all interest related to monies so advance.

14. During the course of J&M's representation of her J&M and AF utilized TTS to perform routine litigation tasks which should have been performed by J&M as part of their contingent retainer.

15. Smalls was never informed that Total Trial was being retained for her case.

16. Prior to being billed, Defendants did not disclose to Smalls that Defendants were actually using Total Trial to provide any services in furtherance of her litigation. Nor did Defendants disclose any charges at all that they incurred on her behalf prior to Smalls receiving her final itemized statement.

3

17. Smalls was never informed that Total Trial was providing services, or the charges or basis of TTS' compensation.

18. Smalls never saw invoices rendered by Total Trial.

19. Defendants did not give Smalls the opportunity to ask J&M or AF to seek other quotes from vendors or to contest these charges before she received her settlement monies. Instead, these Total Solution charges, and the other charges that were included in Smalls' statement, were presented as take or leave it expenses to be deducted from Smalls' settlement funds before she could receive her settlement monies.

20. Defendants never notified Smalls that there were other vendors that would provide a comparable service to Total Trial for less than what Total Trial charges Smalls.

21. Upon information and belief, Defendants failed to adequately determine whether another vendor that would provide comparable services for less existed for the services provided for Smalls' case as well as other members of the Class.

22. Smalls was never informed of the nature of the services purportedly provided by TTS, the reason for their retention, or the benefit to Plaintiff which would justify the expense.

23. J&M settled Smalls' case for $100,000.00. Before liens she would net $57,983.75. J&M calculated its contingent fee as $29,179.37. From her settlement are also to be deducted $13,636.88 of disbursement allegedly advanced by J&M and "funding application fees" of $375.00.

24. Smalls was billed the following amounts by J&M for services by TTS:

| | | |
|---|---|---|
| $ 240.00 | September 28, 2011 | "BP Worksheet Special" |
| $ 25.00 | June 4, 2012 | "CIB Search/MSF Consul" |
| $ 18.75 | August 20, 2012 | "Scan/Upload/Enhance" |

4

| | | |
|---|---|---|
| $   245.86 | October 12, 2012 | "Professional Service" |
| $     51.09 | April 29, 2013 | "Color Printouts/Scan" |
| $       5.88 | April 29, 2013 | "Color Printouts/Photos" |
| $   565.00 | June 10, 2013 | "Posters Mounted Full" |
| $   300.00 | June 10, 2013 | "Google Map Searches" |
| $1,075.00 | July 29, 2013 | "Juror Payment/Food/H" |

The total is $2,526.58.

25. At the conclusion of Smalls' personal injury case, she received an itemized statement of deductions of her net settlement check that included, among other charges, separate charges from Total Trial Solutions. *See* Exhibit B.

26. The description of TTS' services on behalf of J&M in Plaintiff's case, appear to be the type of services which are reasonably expected to be performed by law firms as part of the services to be provide under a contingent retainer agreement and included as part of the contingent percentage fee to be paid by client to a law firm. According to its website, A&F has 22 partners, 1 senior counsel, 15 "F&P attorneys" and 35 "of counsel." The website also touts its "In-house Investigation Division" as an accident investigation division" offering "expert analysis and advice while assisting in the preparations for trial and employs 16 full time investigators."

27. Moreover, the statement failed to provide the billable rates for Total Trial, making further evaluation of the charges impossible.

28. At some point, J&M replaced its firm retainer used with Plaintiff (*see* Ex. A) with a new standard form retainer ("Revised Retainer"). (*See* Ex. B). The Revised Retainer disclosed TTS and its ownership by AF but the problem (and wrongful conduct) remained the same. J&M steered litigation tasks to TTS which should have been included as part of the contingent fee but

which TTS charged J&M clients a separate fee that allowed J&M and AF to earn fees greater than the 1/3 maximum contingency in New York.

29. The Revised Retainer represents that the "Law Firm will perform the following legal services if necessary or appropriate . . .: investigations of claims; determining responsible parties; preparing and filing a lawsuit; settlement procedures and negotiations; prosecution of claims by arbitration or legal action until settlement award or judgment is obtained."

30. The Revised Retainer provides for a 33.3 % contingency arrangement. *Id.* at ¶ 3(a). The Revised Retainer also provides that "Law firm is authorized to incur *reasonable* costs and expenses in performing legal services under this Agreement." *Id.* at ¶4(a) (emphasis supplied).

31. The Revised Retainer also provides:

> 4. <u>Litigation Costs and Expenses</u>:
>
> (a) *Advancement of Costs*
>
> "Law Firm is authorized to incur reasonable costs and expenses in performing legal services under this Agreement." In accordance with applicable law, regardless of the outcome of this matter, Client shall remain responsible to the Law Firm for such advances. The Law Firm utilizes very extensive trial support services in order to obtain the best possible verdict or settlement, which can result in large expenditures by the Law Firm. The costs, expense and disbursements necessary in this case may include any or all of the following items: court filing fees; process serving fees; witness fees; private investigator fees; investigative fees; photographer graphic artist fees; fees to experts for consultation and/or appearance at deposition or trial; mail, messenger and other delivery charges; parking and other local travel; transportation, meals, lodging and all other costs of necessary out-of-town travel; long distance telephone charges; photocopying, imaging, faxing and digital storage charges; and computerized legal research charges; travel costs of attorneys, paralegals, witnesses and expert witnesses who may have to travel to attend inspections, examinations, depositions or trials; medical record retrieval fees, audiovisual rental and other equipment and exhibit rental; and film

6

and image duplication; computerized trial presentation software such as PowerPoint and/or Trial Director together with audiovisual equipment. This list is not exclusive. In addition to the foregoing expenses, other charges may be incurred in connection with the performance of the services described herein by Law Firm. Law Firm may employ such technical experts or investigators who, in its opinion, are necessary to investigate the facts surrounding Client's case or claim. All such experts shall report exclusively to Law Firm. It is agreed that Law Firm may decline, in its sole discretion, to advance costs and disbursements for expert testimony, investigation or other similar services.

With respect to what the total costs and expenses will be at the end of year case, it is impossible to give you precise figure as this amount can vary considerably from case to case depending on many factors such as liability issues, nature and extent of the injuries, number and type of experts, and the magnitude of the defense experts. However, we can tell you that your costs and expenses, particularly if your claims involve traumatic brain injuries or other neurological impairment, may be substantial because of the volume of medical records and the large number of highly specialized medical experts frequently needed to investigate and prove such claims. In addition, you costs and expenses may be substantial, even if your case ultimately settles, because we believe it is in your best interest to prepare every case as if it is going to be tried to verdict as we do not know in advance which cases will settle.

(b) *Independent Contractors*

During the course of the investigation and litigation of your case, we may hire various third-party companies and individuals, of example, medical and technical expert witnesses and/or consultants, economists, investigation firms, nurses and doctors, travel consultants, record requisition firms, forensic accountants, story consultants, and litigation technology consultants. Investigators are often hired for various purposes such as finding and obtaining statements from witnesses, or serving subpoenas. Record requisition firms may be hired to assist us in obtaining and collating the often voluminous medical and other records that we are required to obtain and review to properly prosecute your case. Nurses and doctors may be hired as consultants to conduct medical-legal chart reviews. Bookkeeping services may be engaged to collate the medical expenses form the various medical records, insurance and disability claims files and other records, to calculate and properly prepare claims to recover these costs. Story

7

consultants or jury consultants are theater or psychology professionals who may be hired to assist us in developing a more dramatic and forceful presentation of your case.

> (c) *Total Trial Solutions, LLC, Med Trial Solutions, LLC, and CineTrial Solutions, LLC*

Amon the independent contractors we use in Total Trial Solutions, LLC, ("Total Trial"), MedTrial Solutions, LLC, ("MedTrial"), and CineTrial solutions, LLC ("CineTrial"). Total trial provides a very broad menu of litigation support services. These include, but are not limited to: story and biographical work by accomplished writers, computerized time lines and trial exhibit creation, forensic accounting, forensic data base searches, investigation including scene inspection and witness statements, transportation, translator/interpreter services, in Court technical support, time coding documents for trial/mediation/arbitration. MedTrial provides a very broad menu of medical-legal support services. These include, but are not limited to: medical record review, medical research, research and document retrieval, life care plan analysis, transcript review, expert interview, expert screening and review, nurse accompaniment and defense medical and treating doctor examinations. CineTrial provides a very broad menu of video and image related services. These include, but are not limited to: day in the life films, video and photographic essays, video witness statements, and video defense medical and treating doctor examinations, and video depositions.

32. The retainer also provides in relevant part, referring to independent TTS:

Total Trial, Med Trial and Cine Trail are owned in whole or in part by Andrew Finkelstein and Kenneth Oliver, partners of the Law firm.

Mr. Finkelstein and Mr. Oliver will benefit from the use of these services by the Law Firm. Consequently, you have the right to inquire about the charges for these services and insist that any such services be obtained from other vendors to avoid any potential conflict of interest. Be aware, these companies are not a law firm, are not part of the Law Firm and do not provide legal services. However we have found that the use of these companies allows for a seamless offering of services necessary for exemplary trial work.

You should be aware that most of the services obtained from Total Trial, MedTrial, and CineTrial can be obtained from other vendors. The cost for the services provided by these companies will vary

8

> when provided by other vendors; and, it is possible that the cost of a particular service, when offered by other vendors may be less expensive than those offered by Total Trial, MedTrial, and CineTrial. However, the firm believes Total Trial MedTrial, and CineTrial provide superior services and you will benefit from the services provided by these companies notwithstanding this possible added expense. If at any time the Law Firm believes another vendor will provide comparable services for less it will notify you in order to give you the option of using the other vendor.

*Id.* at ¶4(c).

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action on behalf of herself and all clients of J&M and/or Andrew Finkelstein who were billed for services from Total Trial Solutions, LLC.

34. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3).

35. Plaintiff satisfies the requirements for class certification as provided by Fed. R. Civ. P. 23(a) as set out in detail below.

36. The membership of the proposed Class "is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable." Upon information and belief based on representations by defendants on their respective websites the members of the class are so numerous as to make joinder impracticable.

37. During the class period, Defendants engaged in a uniform course of conduct towards all their clients in New York using standard forms of retainer and a standard procedure for billing clients' fees from TTS.

38. There are questions of law or fact common to the Class which predominates over any questions affecting only individual members. Specifically, the common questions of fact or law include whether, throughout the Class Period:

    a.    Whether defendants' acts breached fiduciary duties;

b. Whether defendants acts constituted violations of GBL Section 349;

c. Whether defendants breached the terms of their retainer agreements with Plaintiff and members of the class.

d. The proper measure of damages.

e. Whether defendants must forfeit the fees for TTS charged to class members.

39. Plaintiff's claims are typical of those of the proposed Class members because the proposed lead Plaintiff's claims are based upon the same legal theories and laws. Plaintiff's grievances and damages, like the proposed Class member's grievances and damages, all arise out of the same relationship with, and course of conduct of, Defendants.

40. The representative Plaintiff can adequately represent the Classes. No conflict of interest exists between the representative and the Class members or with respect to the claims for relief requested.

41. The representative Plaintiff and her chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the representative's attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class members. Furthermore, the resources available to counsel ensure that the litigation will not be hampered by a lack of financial capacity. Plaintiff's attorneys have sufficient financial resources and are willing to absorb the costs of the litigation.

42. A class action is superior to any other available methods for adjudicating this controversy. The proposed class action is the surest way to fairly and expeditiously compensate so large a number of injured persons.

## FIRST COUNT:

## BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS J&M AND AF AND AGAINST TTS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

43. Plaintiff repeats, reiterates and re-allege each and every allegation set forth in paragraphs 1 through 42 above.

44. All attorneys, when retained by clients to handle legal matters and protect client's rights do so under a fiduciary duty imposed by law and the nature of the relationship of trust and confidence and the fact that a client has entrusted to the lawyer the task of protecting valuable rights of the client.

45. Attorneys' duties to clients are deal fairly, honestly and with undivided loyalty; maintaining confidentiality; avoiding conflicts of interest; operating competently; safeguarding client property; handling client's interests over attorney.

46. Defendants J&M and Finkelstein hold themselves out to the public as lawyers that provide affordable legal services to low income individuals. However, they include costs and expenses to client's bills that are improper and which reduce the recovery to their clients while enriching Defendants.

47. In addition to the general fiduciary duties owed by attorneys to clients, there are specific additional fiduciaries that are enumerated in the Code of Professional Conduct and Client's Bill of Rights. J&M and AF's arrangement with TTS violate Rights 3, 4 and 9 of the Bill of Rights.

48. Right 3 provides, "You are entitled to your lawyer's independent professional judgment and undivided loyalty uncompromised by conflicts of interest." The retainer agreement however admits that a conflict exists when one of the entities owned by the partner is retained.

49. Right 4 provides, "You are entitled to be charged a reasonable fee and to have your lawyer explain at the outset how the fee will be computed and the manner and frequency of billing."

50. Rule 9, provides "You are entitled to have your attorney conduct himself or herself ethically in accordance with the Rules of Professional Conduct."

51. The New York Rules of Professional Conduct prohibit attorneys from "mak[ing] an agreement for, charge, or collect an excessive or illegal fee or expense." Rule 1.5(a).

52. The New York Rules of Professional Conduct prohibit attorneys from "enter[ing] into an arrangement for, charge or collect fee[s] based on fraudulent billing." Rule 1.5(d)(3).

53. The terms of the proposed transactions with TTS were not fair and reasonable to the Plaintiff.

54. The services to be provided and the charges for such services were not reasonably comprehensible to the Plaintiff or any reasonably intelligent client.

55. Defendants did not give Plaintiff or other members of the class a reasonable opportunity to consult another lawyer about the transactions with TTS.

56. Attorney's fiduciary duty also requires them to observe and honor the statutorily required Client's Bill of Rights and New York Rules of Professional Conduct.

57. Retainer agreements must clearly state the essential terms of representation. The client should be fully informed of all relevant facts and the basis of the fee charges, especially in contingent fee arrangements.

58. Defendants' acts and conduct constituted fiduciary breaches.

59. Plaintiff and the Class were damaged thereby.

60. Remedies for attorneys' fiduciary breaches include disgorgement of any ill-gotten gain, compensatory damages and forfeiture of fees.

## SECOND COUNT:

### BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANTS J&M AND AF

61. Plaintiff, repeats, reiterates, and re-alleges each and every allegation set forth in paragraphs 1 through 42 above.

62. Plaintiff and Defendants J&M and Andrew Finkelstein contracted with Plaintiff and class members for legal services based on a contingency fee arrangement. As described above, the actions taken by Defendants J&M and Finkelstein have violated the specific terms of Defendants' retainer agreement that it drafts and enters into with clients.

63. J&M and AF agreed to "prosecute a claim for damages" for a contingent fee.

64. Upon information and belief, the charges from Total Trial billed to Smalls and other clients in the Class were for services that constituted legal services which J&M and Finkelstein had contracted to provide as part of the retainer percentage.

65. By failing to provide these services under the contingent fee agreement defendants breached their contracts with Plaintiff and other class members.

66. Under New York law, where Defendants do business, good faith is an element of every contract including retainer agreements. All such contracts impose upon each contracting party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its

form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

67. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

68. Defendants have breached the covenant of good faith and fair dealing in the retainer agreement that it employs with its clients through its billing practices as alleged herein.

69. Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the account agreement.

70. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' breach of the retainer agreement and further breaches of the retainer agreement as modified by the covenant of good faith and fair dealing.

## THIRD COUNT:

### VIOLATION OF THE N.Y. GENERAL BUSINESS LAW § 349(a) AGAINST DEFENDANTS J&M AND AF

71. Plaintiff, repeats, reiterates, and re-alleges each and every allegation set forth in paragraphs 1 through 42 above.

72. The elements of a cause of action under these statutes are that: (1) the challenged transaction was "consumer-oriented"; (2) Defendants engaged in deceptive or materially misleading acts or practices; and (3) Plaintiff was injured by reason of Defendants' deceptive or misleading conduct.

73. Retainer agreements must clearly state the essential terms of representation. The client should be fully informed of all relevant facts and the basis of the fee charges, especially in contingent fee arrangements. While, in the law generally, equivocal contracts will be construed against the drafters, New York's Court of Appeals has directed that as a matter of public policy, courts give particular scrutiny to fee arrangements between attorneys and clients, casting the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and understood by their clients. *See Shaw v. Manufacturers Hanover Trust Co.*, 68 N.Y.2d 172, 176, 499 N.E.2d 864, 866 (1986).

74. Defendants billing policies and practices are deceptive and materially misleading in the following respects, among others:

75. The retainer agreement is a contract of adhesion in that it is a standardized form, imposed and drafted by Defendants, which is a party of vastly superior bargaining strength, and only relegates to the client the opportunity to adhere to the terms or reject the agreement in its entirety.

76. The retainer agreements provided to Plaintiff and other class members is deceptive, unfair, and misleading in that it limits the Firm to incurring only "reasonable costs and expenses in performing legal services under the Agreement." While Defendants knew that their practice was to impose independent contractor charges on every client's fee.

77. Considering the great business acumen, legal knowledge, fiduciary obligation and experience of Defendants in relation to Plaintiff and the members of the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the

parties, and similar public policy concerns, these provisions are deceptive and therefore, unenforceable as a matter of law.

78. The imposition of expenses to a non-attorney owned by Defendants Finkelstein and Oliver for alleged work that amounts to legal services and therefore encompassed by the contingency fee arrangement is itself unconscionable.

79. As a result of the foregoing defendants are in violation of NY GBL 349 ad Plaintiff and class members have been injured thereby.

### FOURTH COUNT (IN THE ALTERNATIVE):

### UNJUST ENRICHMENT AGAINST DEFENDANTS J&M AND TOTAL TRIAL SOLUTIONS

80. Plaintiff, repeats, reiterates, and re-alleges each and every allegation set forth in paragraphs 1 through 42 above.

81. By the acts alleged herein, Defendants received a benefit from Plaintiff and the proposed Class in the form of illegitimate, excessive fees or costs imposed on and collected from each Class member in the manner alleged herein.

82. The retention of that benefit by Defendants would be unjust because the amounts were collected in a manner that violated New York law as outlined herein.

83. By the facts alleged herein, equity demands that Defendants disgorge themselves of this benefit and that the benefit be returned to Plaintiff and the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment to include as follows:

1. Actual damages in the amount of the fees of TTS deducted from settlements and/or paid by Plaintiff and other members of the class to TTS;

2. Disgorgement of all ill-gotten gains derived by Defendants from their misconduct;

3. Disgorgement of all fees to Defendants as a result of their fiduciary breaches and/or conflicted transactions;

4. Punitive and exemplary damages;

5. Damages under GBL 340 applicable;

6. Pre-judgment and Post-judgment interest at the maximum rate permitted by New York law;

7. Reimbursement for the costs and disbursements of Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to CPLR 909 and GBL 349;

8. Such other relief as this Court deems just and proper.

Dated: September 2, 2015

Respectfully submitted,

SQUITIERI & FEARON, LLP

By: _____
Lee Squitieri
32 East 57th Street
12th Floor
New York, New York 10022
(212) 421-6492

LAW OFFICES OF JOSEPH SANTOLI
340 Devon Court
Ridgewood, New Jersey 07450
(201) 926-9200

Attorneys for Plaintiff